**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **MICHAEL HARTLEIB,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | Case No. 19-02099-CM-JPO |
| **THE WEISER LAW FIRM, P.C., et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## MEMORANDUM AND ORDER

Defendants Robert Weiser and The Weiser Law Firm ("Weiser defendants") move to dismiss plaintiff Michael Hartleib's complaint for failure to state a claim for legal malpractice, abuse of process, and violations of the Kansas Consumer Protection Act (KCPA). (Doc. 5.) Defendant Monica Ross-Williams moves to dismiss plaintiff's claims against her for lack of personal jurisdiction, and in the alternative for failure to state a claim for breach of fiduciary duty and abuse of process. (Doc. 7.)

### I. FACTUAL BACKGROUND

This case arises from the settlement of multiple shareholder derivative actions, brought in 2009, based on the unsatisfactory merger of the former Sprint Nextel corporation. Plaintiff is a shareholder in Sprint Corporation, former shareholder in Sprint Nextel, and was an objector to the comprehensive settlement of the underlying derivative litigation. Defendants are the former nominal plaintiff in one of the many underlying derivative actions, and her counsel in that action.

In 2009, plaintiff retained a law firm to file a shareholder derivative action on behalf of Sprint Nextel. On or around March 22, 2009, this first firm allegedly entered an agreement with Weiser defendants which provided that the Weiser firm would be co-counsel for the derivative action. On or about March 27, 2009, Weiser defendants informed plaintiff that they would not be filing the action in

-1-

his name due to a perceived conflict. Weiser defendants then represented defendant Ross-Williams on behalf of Sprint Nextel in essentially the same derivative action. On July 14, 2011, plaintiff retained other counsel and filed a derivative action on behalf of Sprint Nextel in his own name.

Plaintiff's key issues in the instant matter revolve around two later events: (1) the underlying settlement through the *Ross-Williams* action, and (2) a protective order obtained by defendants during the post-settlement approval process. In the underlying settlement process, Weiser defendants sought approval for $4.25 million in attorney's fees, to be split among various firms in the actions that were part of the settlement. Plaintiff filed objections to both the settlement and the attorney's fee request, arguing that the fees requested were excessive and that the settlement's corporate governance reforms were meaningless, lacking enforcement power, and otherwise irrelevant after the buyout and restructure of Sprint Nextel into Sprint Corporation by Softbank.

After inspection of Weiser defendants' billing records and consideration of plaintiff's objection, the state trial court reduced attorney's fees from $4.25 million to $450,000. The trial court stated concerns that substantial work appeared "illusory" and that some of Weiser defendants' billing records were not "remotely accurate or credible." (Doc. 6-5, at 29.) However, the court noted that some settlement provisions had meaningful value and approved the settlement with reduced attorney's fees.

On February 3, 2017, it came to light that several thousand of Weiser defendants' hours worked were billed by a disbarred attorney, and the Kansas Court of Appeals remanded on March 30, 2017 for re-evaluation of appropriate attorney's fees. The trial court concluded this revelation only supported the original reduction and re-affirmed the settlement after noting the disbarred attorney was not involved in the substance of the agreement.

Between this revelation and the re-approval of the reduced attorney's fees, plaintiff directly called and e-mailed defendant Ross-Williams. Plaintiff allegedly took this action to investigate defendant's knowledge of and involvement in the litigation. Plaintiff alleges that defendant was completely unaware of any details in the underlying litigation. On the day of plaintiff's e-mail, Weiser defendants contacted plaintiff to request he cease communicating directly with defendant Ross-Williams, except through counsel. Plaintiff refused, defendants moved for a protective order, and the Court of Appeals granted the protective order.

Plaintiff alleges that this protective order was obtained by defendants filing false accusations of threats and harassment, and that Weiser defendants later used the order in retaliation to a March 2018 amicus brief. Plaintiff moved to reconsider and vacate the order, and the Court of Appeals denied his motions on April 27, 2018, "contin[uing] to find it to be inappropriate for a party to communicate directly with a represented party during the course of litigation[.]" (Doc. 6-9, at 2.) The Court of Appeals affirmed the trial court's approval, and thus the last of the settlement, the same day. Plaintiff then filed a petition for review with the Supreme Court of Kansas, denied on November 21, 2018.

Plaintiff now alleges malpractice and violations of the KCPA against Weiser defendants in connection with their legal services; abuse of process against both defendants in connection with the protective order; and breach of fiduciary duty against defendant Ross-Williams in connection with the underlying litigation.

## II.   LEGAL STANDARDS

### A.  12(b)(2)

On a motion to dismiss under Rule 12(b)(2), the plaintiff bears the burden of establishing a prima facie showing of jurisdiction over the defendant. *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008). When the court rules on a Rule 12(b)(2) motion prior to

evidentiary hearing, the plaintiff may meet his burden by showing facts through affidavits or pleading facts that, if true, would support jurisdiction. *Id.* at 1069–70.

### B. 12(b)(6)

On a motion to dismiss under Rule 12(b)(6), the court assumes true all well-pleaded facts in the complaint, disregards all legal conclusions worded as factual allegations, and grants the plaintiff all reasonable inferences from the pleadings. *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012). To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," not merely possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 570 (2007)) (quotation marks omitted); *see Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). The court may consider documents referred to in the complaint if they are central to the claim and their authenticity is not disputed. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir 2009).

## III. DISCUSSION

The court will address defendant Ross-Williams's motion (Doc. 7) before turning to Weiser defendants' motion (Doc. 5).

### A. Ross-Williams's Motion

Defendant Ross-Williams moves to dismiss for lack of personal jurisdiction, arguing that her filing of a representative action does not satisfy minimum contacts with Kansas, that she never entered Kansas during the underlying litigation (Doc. 8-10, at 2–3 (Ross-Williams Aff.)), and that exercising personal jurisdiction would violate traditional notions of fair play and substantial justice. Plaintiff argues that defendant's filing of the underlying lawsuit purposefully availed her of the protections of Kansas, and in the alternative that defendant's alleged abuse of process is an intentional tort whose effect was centered in Kansas.

### 1. 12(b)(2)

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074 (10th Cir. 2004) (internal quotation marks omitted). Because the Kansas long arm statute is construed to assert personal jurisdiction over a nonresident defendant to the full extent permitted by the due process clause, the statutory and constitutional analysis are effectively the same. *See Blue Beacon Intern., Inc. v. Am. Truck Washes, Inc.*, 886 F. Supp. 485, 488 (D. Kan. 1994) (citing *Volt Delta Res., Inc. v. Devine*, 740 P.2d. 1089, 1092 (1987)). Because defendant Ross-Williams is neither present nor resident in Kansas, only specific jurisdiction applies.

#### i. Specific Jurisdiction

Specific jurisdiction looks to "the relationship among the defendant, the forum, and the litigation." *Daimler AG v. Bauman*, 571 U.S. 117, 133 (2014) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). When examining these relationships, "courts typically make three inquiries: (1) whether the defendant purposefully directed its activities at residents of the forum state; (2) whether the plaintiff's injury arose from those purposefully directed activities; and (3) whether exercising jurisdiction would offend traditional notions of fair play and substantial justice." *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013) (citing *Dudnikov*, 514 F.3d at 1070).

The "purposeful direction" requirement has three elements: (1) an intentional action; (2) expressly aimed at the forum state; (3) with knowledge that the brunt of the injury would be felt in the forum state.[1] *Dudnikov*, 514 F.3d at 1072. The goal of the "purposeful direction" requirement is "to

---

[1] Although plaintiff alleges defendant Ross-Williams purposefully availed herself of the protections of Kansas, the minimum contacts analysis is the same whether defendant "purposefully directed" her activities at the forum or "purposefully availed" herself of the protections of the forum. *See Dudnikov*, 514 F.3d 1063, 1070 (10th Cir. 2008) (discussing both terms as "different guises" of the "minimum contacts" standard).

ensure that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Id.* at 1071 (citation omitted). Allegations of primarily passive out-of-state conduct do not support the intentional action necessary for purposeful direction. *See Toytrackerz LLC v. Am. Plastic Equip., Inc.*, 615 F. Supp. 2d 1242, 1254 (D. Kan. 2009).

Here, plaintiff claims defendant intentionally (1) breached a fiduciary duty owed to Sprint Nextel and shareholders, and (2) abused the legal process in the underlying litigation by obtaining a protective order under false pretenses. Plaintiff's claim for breach of fiduciary duty in his individual capacity encounters multiple problems unique to representative litigation.

First, the underlying litigation was a derivative action filed to enforce rights of the corporation against its board of directors, not the rights of defendant Ross-Williams. Derivative actions are distinct from shareholder class actions, which are brought to enforce shareholder rights or for redress of shareholder injury. Specific personal jurisdiction requires that "[defendant] directed *its activities* at residents of the forum state," but defendant's filing as a nominal plaintiff is an enforcement of the corporation's rights, not her own activity. *See Newsome*, 722 F.3d at 1264 (emphasis added). Therefore, plaintiff must show some activity by defendant distinct from the mere filing of representative action.

Second, while plaintiff alleges that defendant breached a fiduciary duty then-owed to him as a shareholder, the complaint is clear that the basis of this breach is defendant's alleged lack of day-to-day involvement and supervision in the underlying litigation. This passive non-participation is not the sort of intentional conduct directed at Kansas necessary to support specific personal jurisdiction. Finally, any connection between defendant Ross-Williams, a duty owed to plaintiff in the derivative suit, and Kansas is the sort of "merely . . . attenuated" contact through defendant's underlying vindication of the corporate rights of Sprint Nextel, and plaintiff's generalized interest in the well-

-6-

being of the corporation.  *See Dudnikov*, 514 F.3d at 1071.  While different and unusual circumstances may support personal jurisdiction based on representative litigation, the circumstances alleged by plaintiff do not.

Plaintiff's abuse of process arguments against defendant Ross-Williams encounter a similar problem: the protective order arises from defendant's response to plaintiff's unilateral decision to contact her instead of communicating through counsel.  Plaintiff alleges that defendant Ross-Williams made false statements and obtained the protective order under false pretenses, and argues that the underlying circumstances here are sufficient for jurisdiction on the same theory of defamation as in *Calder v. Jones*.  *See* 465 U.S. 783, 789–90.

In the instant case, plaintiff alleges jurisdiction based on absolutely-privileged court filings, where defendant sought a protective order due to plaintiff's original contact with defendant.  *See Clear Water Truck Co. v. M. Bruenger & Co.*, 519 P.2d 682, 685–86 (Kan. 1974) (discussing absolute privilege for communications "relevant to the issue involved" in judicial proceedings).  While *Calder* did deal with defamatory communications, it did so in the context of an unprivileged publication of a magazine article causing injury within the forum.  *See id.* at 788–89.  Defendant Ross-Williams may have some activity alleged within the state forum here, but that activity is an absolutely-privileged communication made in response to plaintiff's unilateral acts.  This privileged response to plaintiff's unilateral conduct does not support personal jurisdiction.

Pursuant to Federal Rule of Civil Procedure 12(b)(2), because plaintiff has not plausibly alleged that defendant Ross-Williams has either purposefully availed herself of the protections of Kansas or intentionally directed harm in Kansas, the court grants defendant's motion to dismiss for lack of personal jurisdiction.  Because the defendant lacks minimum contacts with Kansas, the court does not address whether the exercise of personal jurisdiction over her would violate traditional

notions of fair play and substantial justice. Furthermore, because the court lacks personal jurisdiction over defendant, the court does not reach her arguments under Federal Rule of Civil Procedure 12(b)(6).

### B. Weiser Defendants' Motion

Weiser defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that plaintiff's claims are either untimely, insufficiently pleaded, or barred by preclusion based on the underlying litigation. Plaintiff argues that his claims are timely because defendants breached ongoing attorney-client duties and because his alleged injuries were not clear until the Supreme Court of Kansas denied his petition for review.

#### 1. Standing

Plaintiff and Weiser defendants vigorously dispute whether issue preclusion applies to some of plaintiff's theories and whether plaintiff may pursue malpractice claims for duties owed by Weiser defendants to Sprint Nextel. Without addressing preclusion, the court is persuaded that plaintiff lacks standing for many of these disputed claims.

When a corporation is injured, the claims arising out of that injury belong to the corporation. *Lightner v. Lightner*, 266 P.3d 539, 545 (Kan. Ct. App. 2011). Generally, attorneys representing corporations owe no duty to third-party shareholders. *See Miller v. Staab*, 113 P.3d 274 (Kan. Ct. App. 2005) (Table). Kansas recognizes an exception when "the corporate injury also inflicts an "[independent] and disproportionate injury on the shareholder, or if the action involves a contractual right of the shareholder which exists independently of any right of the corporation." *Richards v. Bryan*, 879 P.2d 638, 646–47 (Kan. Ct. App. 1994); *see Lightner*, 266 P.3d at 545. However, when the alleged individual injury is only through the third-party shareholder's attenuated interest in the corporate injury, that shareholder lacks standing to sue. *See Orr v. Husch Blackwell, LLP,* 718 F.

App'x 759, 760 (10th Cir. 2018); *Comeau v. Rupp*, 810 F. Supp. 1127, 1153 (D. Kan. 1992) (collecting cases).

Here, plaintiff's settlement-related malpractice claims involve both corporate injury and personal injury. To the extent plaintiff alleges claims based on Weiser defendants' use of a non-attorney during the underlying litigation, or on the adequacy of the settlement and request for attorney's fees, these injuries belong to the corporation. Plaintiff lacks standing to bring these claims individually.

Accordingly, the only malpractice claims the court considers are plaintiff's claims surrounding (1) the refusal to file with plaintiff and subsequent filing with defendant Ross-Williams; (2) conflict of interest in the protective order, (3) disclosure of privileged communication, and (4) general adverse action in plaintiff's opposition to the settlement. Plaintiff's abuse of process claim is also properly considered a personal injury and non-malpractice action. The court turns to whether these five theories remain timely.

### 2. 12(b)(6)

Plaintiff refers to many different court filings and communications from the underlying litigation and other proceedings. The court accordingly considers these documents as they are available in the parties' filings, referred to in plaintiff's claims, and central to plaintiff's claims.

#### i. Statute of Limitations

In Kansas, the statute of limitations for legal malpractice begins to run depending on one of at least four theories of injury:

> (1) The occurrence rule—the statute begins to run at the occurrence of the lawyer's negligent act or omission.
> (2) The damage rule—the client does not accrue a cause of action for malpractice until he suffers appreciable harm or actual damage as a consequence of his lawyer's conduct.

> (3) The discovery rule—the statute does not begin to run until the client discovers, or reasonably should have discovered, the material facts essential to his cause of action against the attorney.
> (4) The continuous representation rule—the client's cause of action does not accrue until the attorney-client relationship is terminated.

*Pancake House*, *Inc. v. Redmond By & Through Redmond*, 716 P.2d 575, 579 (Kan. 1986). Different theories of injury apply to plaintiff's multiple malpractice claims, and some of these theories are timely while others are not.

### a. Refusal to File

First, with respect to Weiser defendants' refusal to file the underlying litigation with plaintiff and subsequent filing with defendant Ross-Williams, the court is persuaded that the discovery rule applies. To the extent that Weiser defendants breached a duty owed to plaintiff solely by filing the underlying action, plaintiff was aware of this refusal as early as March 27, 2009—when Weiser defendants informed him of a conflict—and no later than the stipulation in his own derivative action on November 15, 2011, which referred to the *Ross-Williams* action by name. (Doc. 6-4, at 2.) As a result, any claims based on the filing of the underlying action by Weiser defendants needed to be filed no later than November 15, 2013. Plaintiff's claims, filed in 2019, are untimely.

### b. Conflict of Interest and Abuse of Process

Second, with respect to defendants' alleged conflict of interest and abuse of process in the underlying litigation, Weiser defendants sought and obtained the protective order against plaintiff on March 30, 2017. Plaintiff filed this action on January 22, 2019, so any plausible claim based on conflict or abuse of process is timely regardless of the rule applied. For the same reason, any plausible claim for abuse of process based on the order's later use in other litigation remains timely.

### c. Disclosure of Privileged Communication

Third, with respect to defendant's alleged disclosure of confidential communication, the court is persuaded that either the occurrence rule or the discovery rule applies. To the extent plaintiff refers to the communications discussed in and attached to Weiser defendants' reply brief in the district court (Doc. 6-20, at 186–95), this alleged breach occurred upon filing the document in August 2016. Plaintiff, then-participating in proceedings as an objector, was necessarily on notice and reasonably should have discovered the disclosure on the same date. Plaintiff's 2019 claims are untimely where based on Weiser defendants' briefing in the district court. To the extent plaintiff's claims are based on Weiser defendants' alleged abuse of process in the later Georgia litigation, the court addresses that theory in its malpractice analysis. Plaintiff does not plausibly identify or refer to other protected communications with Weiser defendants.

### d. Opposition

Fourth, with respect to defendants' general opposition in the underlying litigation, plaintiff argues that the statute of limitations did not begin to run until the Supreme Court of Kansas denied his petition for review. Plaintiff argues he could not have prosecuted his malpractice claims before exhausting appellate relief, regardless of whether he knew of an alleged breach of duty by Weiser defendants. Defendants argue that any breach of duty occurred between May 2016—when plaintiff filed his Objection in the underlying litigation—and November 2016, when the trial court approved the settlement. The parties dispute the effect of *Dearborn Animal Clinic, P.A. v. Wilson* on this point. 806 P.2d 997 (Kan. 1991). Plaintiff argues that *Dearborn* stands for the presumption that a malpractice action does not accrue until a client both suffers injury and has reasonable knowledge of the injury, while Weiser defendants argue that the case requires only that certain facts become obvious to the

client. The court agrees with the Weiser defendants as to the holding of *Dearborn*, but not as to the reasoning behind that holding and its subsequent effect on the instant case.

In *Dearborn Animal Clinic*, the plaintiffs were damaged when they had to retain counsel to enforce their interpretation of a contract due to a party's reduction in payments. *Id.* at 1006. The key dispute was whether a contract created an obligation or merely an option for a party to purchase stock in a business. *See id.* at 1005–06. The Supreme Court of Kansas stated that "the plaintiffs clearly suffered monetary damage when they had to retain counsel to enforce their interpretation . . . *and* when [the non-paying party] reduced his payments[,]" but continued that "it is not so clear that plaintiffs could reasonably ascertain [either when payments were reduced or when the plaintiffs retained counsel] that such injury was the result of [counsel's] alleged negligence." *Id.* at 1006 (emphasis added). While the court did conclude that the statute of limitations began to run when the attorney's alleged negligence was reasonably ascertainable, the court based this on the date when discovery showed that all parties understood the agreement to contain only an option, which made the injury ascertainable by resolving the reasonable legal dispute. *Id.*

Here, the court is persuaded that a settlement-related claim for malpractice could not be prosecuted without exhausting appellate relief. Although the trial court's approval was apparent in November 2016, disputes over Weiser defendants' allegedly injurious settlement and attorney's fees were not clearly resolved until the Supreme Court of Kansas denied review, resolving the disputed question. The court does not conclude that the appellate process must always be exhausted in order for the statute of limitations to begin running, but rather that in this instance, an injury traceable to a reasonably disputed question was not ascertained until appellate relief was exhausted.

However, the court is not persuaded that this dispute relates to an injury that belongs to plaintiff. An injury based on the reasonableness of attorney's fees and the content of the settlement

belongs to the injured corporation, not to an individual shareholder-objector. Plaintiff argues that his settlement-related claims are not barred because he bases his theory of recovery on lost opportunity and other damages incurred through his opposition to the settlement, but this theory is not the reasonable legal dispute that survived the statute of limitations. Plaintiff ascertained any injury under his own theory—the need to object and the existence of at least some associated costs—between May 2016 and November 2016. If plaintiff had standing to bring his personal claims for recovery, these claims are now untimely.

Accordingly, plaintiff's only timely claims are (1) malpractice due to alleged conflict of interest in the protective order; (2) malpractice due to use of privileged communications in the protective order and Georgia litigation; and (3) abuse of process in both the protective order and its later use in the Georgia litigation.

### ii. Malpractice

Plaintiff argues two theories of malpractice: (1) the representation of defendant Ross-Williams in the protective order as an un-waived conflict of interest, and (2) the use of privileged communications in both the protective order and the Georgia litigation.

Different ethical considerations are triggered depending on the date the attorney-client relationship ended between Weiser defendants and plaintiff. Plaintiff alleges that Weiser defendants "entered into an attorney-client relationship with [plaintiff] which was never terminated." (Doc. 1-2, at 8.) Weiser defendants argue that this relationship—if it existed—ended as early as March 27, 2009, when Weiser defendants informed him they would not file the action with him, and no later than July 14, 2011, when plaintiff retained other counsel to file the same action.

The formation of the attorney-client relationship "is sufficiently established when it is shown that the advice and assistance of the attorney are sought and received in matters pertinent to his

-13-

profession." *Barragree v. Tri-County Elec. Co-op., Inc.*, 950 P.2d 1351, 1358 (Kan. 1997) (citations omitted). The relationship may be terminated unambiguously or when it is clear the client is no longer relying on the attorney to represent the client's interests. *See id.* at 1358–59. If the attorney is retained for a specific matter, the representation generally ends when that matter is resolved. *See id.* at 1358.

Here, the court recognizes that best practices generally recommend the clear and unambiguous communication of termination of the attorney-client relationship, but these practices are not required.[2] As alleged, plaintiff sought representation by Weiser defendants specifically for the underlying derivative matter. Weiser defendants informed him that they would not be filing the matter in his name, and plaintiff then retained another attorney to pursue the matter. Plaintiff's actions in retaining new counsel and filing his own derivative suit show that no later than July 14, 2011, he was no longer relying on Weiser defendants to represent him in the derivative action. Accordingly, no later than July 14, 2011, and before the remaining malpractice allegations, plaintiff became a former client.

### a. Conflict of Interest

Plaintiff argues that Weiser defendants' representation of defendant Ross-Williams in the protective order amounted to an impermissible switching of sides in violation of counsel's duties to former clients under Kansas Rule of Professional Conduct 1.9. Weiser defendants argue both that their actions did not amount to a switching of sides in the derivative action, and that the facts of the protective order were unrelated to those of the derivative action.

Assuming Kansas Rule of Professional Conduct 1.9 may fall within the duty of loyalty, the rule prevents an attorney from representing a new client in substantially related matters when that new client's interests are materially adverse to those of the former client, unless the attorney has informed consent in writing. *See* KRPC 1.9. The rule further prevents representation of a new client where (1) a

---

[2] While Kansas requires counsel of record to specifically withdraw from representation, Weiser defendants were never plaintiff's counsel of record. *See* KRPC 1.16(a)(3).

previous client's interests are materially adverse to the new client, and (2) the lawyer acquired protected information about the previous client material to the new matter. *Id.* Comment 2 to the rule clarifies that "[t]he underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question." *Id.* cmt. 2. Comment 3 to the rule further notes that "[m]atters are 'substantially related' . . . if they involve the same transaction or legal dispute," but notes that factually distinct matters do not create a conflict even if they may involve the same clients. *Id.* cmt. 3; *see Briggs v. Aldi, Inc. (Kansas)*, 218 F. Supp. 2d 1260, 1268–69 (D. Kan. 2002) (declining to disqualify attorney from representing employee against former client-employer despite previous representation of employer in factually unrelated matters).

Here, plaintiff originally sought to retain Weiser defendants for the identical derivative action filed with defendant Ross-Williams. For many of the same reasons the court cannot exercise personal jurisdiction over defendant Ross-Williams, Weiser defendants' representation of her in the protective order did not create a conflict. Plaintiff originally sought to vindicate the rights of Sprint Nextel in an action on behalf of the corporation against its board. The protective order, although issued against plaintiff, neither amounted to a switching of sides adverse to the interests of Sprint Nextel, nor relied on the same factual background as the derivative action. While the derivative action relied on the pre-suit actions of the Sprint Nextel board of directors and the unsatisfactory results of the Nextel acquisition, the protective order relied on plaintiff's post-settlement communications with defendant Ross-Williams. Accordingly, Weiser defendants' representation of defendant Ross-Williams was neither substantially related to the derivative action nor amounted to a switching of sides adverse to the interests of the derivative action. Therefore, Weiser defendants' representation of defendant Ross-Williams did not plausibly present a conflict.

### b. Disclosure of Privileged Communications

Plaintiff's allegations about Weiser defendants' improper disclosure of privileged communications are contained in Paragraph 44(e) of the complaint. (Doc. 1-2, at 9.) Plaintiff alleges defendants "[used plaintiff's] communications . . . which were protected by the attorney-client privilege, against him in connection with the underlying litigation and the [protective order]." (*Id.*) Plaintiff continues that Weiser defendants "shar[ed] privileged communications in the [Georgia case], and proffer[ed] falsehoods relating to [these] communications in a willful attempt to harm [plaintiff] and obfuscate [Weiser defendants'] duplicitous acts[.]" (*Id.*) Plaintiff does not identify any allegedly-protected communications at issue. However, in the course of plaintiff's objection in the underlying derivative action, plaintiff discussed some of his alleged attorney-client communications with Weiser defendants and attached multiple e-mails from Weiser defendants and plaintiff's then co-counsel with Weiser defendants. (Doc. 6-6, at 3, 14–21.) After plaintiff discussed these communications both in filings and in person, Weiser defendants referred to and attached his communications in briefing. (Doc. 6-20, at 178–95.)

In Kansas, the attorney-client privilege is waived when the client "begins to testify" as to communications within the relationship. *Houser v. Frank*, 350 P.2d 801, 804–05 (Kan. 1960); *see State ex. rel. Stovall v. Meneley*, 22 P.3d 124, 141–42 (Kan. 2001). The submission of several attorney-client communications together with the client's testimony thus waives privilege for those communications. Accordingly, plaintiff waived his privilege on May 12, 2016, by referring to and attaching several privileged communications when he filed his notice of intent to appear and object in the underlying action. Because plaintiff waived privilege, plaintiff's malpractice claim for post-waiver disclosure of those same communications is not plausible. In the alternative, plaintiff's claims are not

plausible because he has not alleged a communication, disclosed by Weiser defendants, beyond the scope of his waiver.

### iii. Abuse of Process

Finally, plaintiff alleges that Weiser defendants abused the legal process against him when they (1) obtained a protective order preventing him from contacting defendant Ross-Williams except through counsel, and (2) later used that protective order in unrelated litigation in Georgia. Plaintiff argues that Weiser defendants obtained the protective order under false pretenses so that the order could be used to prevent plaintiff from challenging Weiser defendants in other litigation.

A claim for abuse of process requires (1) that the defendant made an illegal, improper use of process neither warranted nor authorized by the process; (2) that the defendant had an ulterior motive at the time of the improper use of process; and (3) the plaintiff was damaged by the improper use. *Porter v. Stormont-Vail Hosp.*, 621 P.2d 411, 416 (Kan. 1980). An abuse of process requires both the original ulterior motive and "an act in the use of such process not proper in the regular prosecution of the proceeding." *Vanover v. Cook*, 260 F.3d 1182, 1191 (10th Cir. 2001) (citing *Welch v. Shepherd*, 219 P.2d 444, 447 (Kan. 1950)).

Here, after plaintiff called and e-mailed defendant Ross-Williams during the underlying litigation (Doc. 1-2, at 6; Doc. 6-13, at 6–7), Weiser defendants asked that all contact be done through counsel and that plaintiff cease contacting defendant Ross-Williams directly. (Doc. 6-13, at 8–10.) On March 9, 2017, two days after plaintiff refused to communicate through counsel (*Id.* at 11–12), Weiser defendants moved for a protective order. (*Id.* at 1–4; Doc. 6-8, at 1–2.) Plaintiff moved to vacate the order, and the Court of Appeals denied his motion, finding it "inappropriate for a party to communicate directly with a represented party during the course of litigation[.]" (Doc. 6-9, at 2.) In light of the circumstances and the appellate court's conclusions, plaintiff's allegation that Weiser defendants

-17-

obtained the protective order for improper purpose is not plausible. Weiser defendants requested plaintiff communicate through normal channels, plaintiff immediately refused, and Weiser defendants moved for a protective order only after this refusal. These are ordinary circumstances for requesting a protective order. Accordingly, plaintiff has not plausibly alleged an improper use of process in the underlying litigation. The court turns to the alleged use of the protective order in an unrelated Georgia matter.

The protective order in the underlying litigation issued on March 30, 2017. (Doc. 6-8, at 1–2.) The *Equifax* litigation in Georgia began in January 2018. (Doc. 6-17, at 1.) Plaintiff submitted an amicus brief in that case on March 15, 2018, accusing Weiser defendants of fraud, malpractice, incompetence, and furtherance of a criminal enterprise based on their actions in the *Ross-Williams* litigation. (Doc. 6-14, at 4–6.) Plaintiff's filing discussed his direct communications with defendant Ross-Williams, but did not mention the protective order. (*Id.* at 4–5.) Weiser defendants and their client in the Georgia litigation filed an opposition, noting that plaintiff had become hostile to the Weiser firm after his dissatisfaction with the *Ross-Williams* settlement. (Doc. 6-15, at 4–7.) In support of Weiser defendants' representation that plaintiff's filing was not as a proper "friend of the court," but rather "to antagonize and harm the Weiser Firm[,]" Weiser defendants attached both the communications leading to the protective order, and the protective order itself. (*Id.* at 38–45.)

The court is not persuaded that this usage of the protective order, one year after the order's issuance and to illustrate plaintiff's lack of amicus status, plausibly alleges an abuse of process. In order to show an abuse of process, plaintiff must plausibly allege that Weiser defendants both originally intended to use process for improper means and acted in furtherance of that intent. *See Vanover*, 260 F.3d at 1191. Defendants moved for the protective order only after plaintiff refused to cease improper contact, and the appellate court maintained the order for the same reason. It is not

plausible that Weiser defendants instead intended to use the protective order one year later in unrelated opposition filings, rather than immediately for the purpose the order was both issued and actually used. Because plaintiff has not plausibly alleged an improper purpose in obtaining the protective order, plaintiff's claims for abuse of process claims in the unrelated litigation are not plausible.

Because the court concludes plaintiff's claims are not plausible for the reasons above, the court does not reach the parties' arguments on preclusion.

### IV.    CONCLUSION

Pursuant to Federal Rule of Civil Procedure 12(b)(2), the court grants defendant Ross-Williams's motion to dismiss for lack of personal jurisdiction (Doc. 7), and defendant Ross-Williams is dismissed without prejudice.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), because plaintiff lacks standing to allege some claims, and his other claims are either untimely or implausible, the court grants Weiser defendants' motion to dismiss (Doc. 5). Plaintiff's claims for breach of fiduciary duty (Count I), violations of the KCPA (Count II), and abuse of process (Count III) are dismissed.

The court recognizes plaintiff's significant ethical concerns about the conduct of Weiser defendants in both the underlying litigation and ongoing actions. Plaintiff's recourse at this time is through the appropriate state disciplinary reporting systems.

**IT IS THEREFORE ORDERED** that defendant Ross-Williams's motion to dismiss for lack of personal jurisdiction (Doc. 7) is granted. Defendant Ross-Williams is dismissed without prejudice.

**IT IS FURTHER ORDERED** that Weiser defendants' motion to dismiss (Doc. 5) is granted. Plaintiff's claims against Weiser defendants are dismissed.

The Clerk of Court is directed to enter judgment in favor of defendants and against plaintiff.

The case is closed.

Dated this 21st day of August, 2019, at Kansas City, Kansas.

>  **s/ Carlos Murguia**
>  **CARLOS MURGUIA**
>  **United States District Judge**