## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MICHAEL HARTLEIB,

      *Plaintiff,*

vs.

                                  Case No. 19-2099-EFM-JPO

THE WEISER LAW FIRM, P.C., et al.,

      *Defendants.*

## MEMORANDUM AND ORDER

Plaintiff Michael Hartleib moves this Court to take two actions, to: (1) reconsider its earlier ruling that he alleged no plausible claim that Defendants Robert Weiser and The Weiser Law Firm, P.C. (the "Weiser Defendants') committed legal malpractice by disclosing allegedly privileged statements Hartleib communicated to them, and (2) allow him to file a new amended complaint adding a single allegation to support that malpractice claim. Because Hartleib's reconsideration argument comes too late and his offered complaint alleges too little to make his malpractice claim plausible, the Court denies Hartleib's Motion for Reconsideration (Doc. 20).

### I.      Factual and Procedural Background

Only a fraction of the complicated history that produced Hartleib's lawsuit needs repeated here. Hartleib's and the Weiser Defendants' paths first crossed in March 2009. Then a shareholder in the Sprint Nextel Corporation, Hartleib retained The Law Offices of Bruce G. Murphy to file a shareholder derivative action arising from Sprint's and Nextel's merger. By March 22, 2009, Murphy's firm had entered an agreement with the Weiser Defendants that provided that Weiser

would aid Murphy as co-counsel in the derivative action.  Several additional communications took place over the next several days, including a phone conversation between Hartleib and Weiser. Following that conversation, on March 27, 2009, Hartleib received an email that the derivative suit would not be filed in his name due to a potential conflict created by his involvement in other litigation against Sprint that arguably made him an inadequate shareholder representative.  Murphy and the Weiser Defendants later filed essentially the same shareholder derivative action in the District Court of Johnson County, Kansas (the "Sprint litigation"), with a different named plaintiff. Hartleib retained other counsel and filed an action in his own name.

Certain of the communications that occurred during this March 2009 period resurfaced during later litigation.

On May 12, 2016, in the Sprint litigation, Hartleib filed an objection to the proposed settlement.  Hartleib's objection asserted, in part, that Murphy, Weiser, and "some of the plaintiffs . . . may not have 'clean hands' . . . . and have brought claims forward for their own unjust enrichment, breeching their fiduciary duties . . . ."[1]  Hartleib described how his actions in "seeking legal assistance" led Murphy and Weiser originally to prepare "the same complaint used in this case" for him, but Murphy and Weiser instead filed the complaint using an in-the-family "serial plaintiff."[2]  Hartleib accused Murphy and Weiser of both "put[ting] their interest ahead of that of the shareholders and corporation"[3] and doing "no real work" to earn their requested fees.[4]  To support his position, Hartleib revealed (1) the engagement letter between himself and Murphy and

---

[1] Doc. 6-6 at 2.

[2] *Id.* at 3.

[3] *Id.*

[4] *Id.* at 6–7.

(2) several email communications involving, to various degrees, Hartleib, Murphy, and Weiser, demonstrating the above-described events.  Hartleib's disclosures included the March 27, 2009 email he had received from Murphy and Weiser, wherein he was advised that his name would not be used to file the Sprint litigation.

Nearly two years later, in an unrelated shareholder derivative lawsuit filed with the Weiser Defendants' assistance in the United States District Court for the Northern District of Georgia (the "Equifax litigation"), Hartleib, as a nonparty to the suit, sought leave to file an amicus brief opposing the Weiser Defendants' appointment as lead counsel.  Focusing on the firm's alleged use of a "unfit plaintiff" and "disbarred attorney," Hartleib criticized the Weiser Defendants' conduct in the Sprint litigation as "criminal" and illustrative of "the Weiser firm's desperate attempt to unjustly enrich themselves . . . on the backs of those they falsely purport to represent."[5]  From there, Hartleib argued that the Weiser Defendants are either too "corrupt" or "inept" to "act as lead on any representative suit."[6]  The Weiser Defendants responded that Hartleib was misusing amicus status to continue "effort[s] to harass and disturb the Weiser Firm."[7]  To contextualize those efforts and show "that Hartleib is anything but 'impartial'"—a necessary trait for any would-be amicus filer—the Weiser Defendants outlined "Hartleib's unique relationship and history with the Weiser Firm," starting with the events that precipitated the Sprint litigation.[8]  Among other statements, Weiser represented in a supporting declaration:

> I believed that my first telephonic communication with Hartleib occurred during the evening of March 26, 2009.  During this call, among other things, Hartleib claimed that he had spent 'hundreds of hours' investigating Sprint, and

---

[5] Doc. 6-14 at 4–6, 8–9.

[6] *Id.* at 9.

[7] Doc. 6-15 at 14.

[8] *Id.* at 18.

that he had previously contacted another law firm in order to 'give them' the facts and analysis necessary to initiate and prosecute a federal securities class action against Sprint. Hartleib also stated that he was considering moving to be appointed as the lead plaintiff in the federal securities class action and that he would be an ideal plaintiff for that case (based upon his alleged knowledge regarding Sprint). Finally, Hartleib also strongly implied that he was interested in sharing any potential attorneys' fees that the Weiser Firm might recover if we agreed to represent him in connection with a shareholder derivative action on Sprint's behalf.

Based on this conversation, it was my opinion that if any of Hartleib's representations were true, the Weiser Firm could not represent him in any derivative action brought for Sprint's benefit. First, if Hartleib had in fact played some role in commencing a securities class action *against* Sprint, that alone would present an obvious conflict of interest that would preclude his representation as a derivative plaintiff. This is because the plaintiffs to the securities class action were seeking to, *inter alia*, recover monetary damages from Sprint, whereas any potential derivative plaintiff would be bringing a suit on Sprint's behalf and would accordingly be charged in a fiduciary capacity with protecting Sprint's best interests. Second, even if Hartleib had misrepresented or somehow misstated his role in purportedly "causing" a securities class action to be filed against Sprint, I was extremely uncomfortable with his implication that the Weiser Firm share any attorneys' fees with him in some manner.[9]

Among other claims in this action, Hartleib sued the Weiser Defendants for committing

legal malpractice by allegedly:

Using Mr. Hartleib's communications with them, which were protected by the attorney-client privilege, against him in connection with the underlying [Sprint] litigation . . . . In addition, sharing privileged communications in the unrelated [Equifax litigation], and proffering falsehoods relating to said communications in a willful attempt to harm Mr. Hartleib and obfuscate their duplicitous acts.[10]

When the Weiser Defendants moved for dismissal, they argued Hartleib stated no disclosure-based

malpractice claim because: (1) Hartleib's allegation is "conclusory" without "the contents of th[e]

alleged privileged communications . . . the Weiser Defendants allegedly improperly revealed," and

assuming otherwise, (2) Hartleib waived any attorney-client privilege by first disclosing, in his

---

[9] *Id.* at 29–30 (emphasis in original).

[10] Doc. 1-2 at 9.

objection and related pleadings filed in the Sprint litigation, "a portion of the March 2009 communications between Mr. Weiser, Mr. Murphy and himself."[11]  Their motion included copies of the at-issue court filings and communications mentioned above.  In his response, Hartleib acknowledged that "the court may consider not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference."[12]  But he argued that his legal malpractice claims "are normally to be determined by the trier of fact and, therefore, Weiser's negligent conduct is not properly a 'matter of law' to be decided on a motion to dismiss."[13]  A review of Hartleib's complaint, the at-issue filings, and the parties' briefing convinced the Court that Hartleib states no legally viable claim:

> [Hartleib] waived his privilege on May 12, 2016, by referring to and attaching several privileged communications when he filed his notice of intent to appear and object in the underlying [Sprint litigation].  Because [Hartleib] waived privilege, [Hartleib's] malpractice claim for post-waiver disclosure of those same communications is not plausible.  In the alternative, [Hartleib's] claims are not plausible because he has not alleged a communication, disclosed by the Weiser [D]efendants, beyond the scope of his waiver.[14]

Judgement was entered in favor of the Weiser Defendants following the Court's order.[15]  Weiser timely responded to that ruling with a motion requesting reconsideration and leave to file an amended complaint that alleges a "specific . . . improper disclosure of attorney-client privileged communications that unquestionably went far beyond the scope of [Hartleib's] waiver."[16]

---

[11] Doc. 6 at 19–20.

[12] Doc. 12, at 11.

[13] *Id.* at 16.

[14] Doc. 18 at 16–17.

[15] *See generally* Doc. 19.

[16] Doc. 20 at 3.

-5-

## II.   Legal Standard

Here, where Hartleib seeks to amend his complaint after this Court has entered judgment dismissing the case, Fed. R. Civ. P. 15(a)'s presumption favoring "freely given" leave to amend is reversed.[17]   Filing an amended complaint postjudgment is impermissible "until judgment is set aside or vacated pursuant to Fed. R. Civ. P. 59(e)."[18]

To set aside the Court's earlier judgment under Rule 59(e), Hartleib must show that the Court misapprehended the law, the facts, or his position.[19]   Stated otherwise, Hartleib must show: (1) an intervening change in the controlling law; (2) new, previously unavailable evidence; or (3) the need to correct clear error or prevent manifest injustice.[20]   "[R]evisit[ing] issues already addressed or advanc[ing] arguments that could have been raised in prior briefing" will not do.[21]

## III.   Analysis

Hartleib argues for reconsideration on only one basis: the need to prevent manifest injustice.   The Court previously ruled that Hartleib pleaded no plausible malpractice claim for the disclosure of privileged communications "because he ha[d] not alleged a communication, disclosed by [the] Weiser [D]efendants, beyond the scope of his waiver."[22]   In so ruling, according to Hartleib, the Court "effectively imposed a heightened pleading standard on Hartleib and made an improper factual determination [that he] could not state a claim based on the communications

---

[17] *The Tool Box, Inc. v. Ogden City Corp.*, 419 F.3d 1084, 1087–88 (10th Cir. 2005).

[18] *Id.* at 1087.

[19] *Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1203 (10th Cir. 2018).

[20] *Id.*

[21] *Id.*

[22] Doc. 18 at 16–17.

attached to the Weiser [D]efendants' motion to dismiss."[23]   Hartleib characterizes the resulting with-prejudice dismissal as "a manifest injustice" that can be avoided only by affording him reconsideration and leave to amend his complaint to allege that the Weiser Defendants disclosed a protected attorney-client communication not covered by any waiver when they "[r]epresent[ed] to the United States District Court for the Northern District of Georgia that Mr. Hartleib 'strongly implied that he was interested in sharing any potential attorneys' fees that the Weiser Firm might recover.'"[24]   In three critical respects, the Court disagrees.

First, Hartleib's response to the Weiser Defendants' motion could have raised but omitted this argument.  Hartleib essentially argues that the Court "imposed a heightened pleading standard . . . and made an improper factual determination" because it looked outside his complaint to the at-issue court filings the Weiser Defendants submitted with their motion.[25]  But Hartleib raised no particular objection to the Court's consideration of those exhibits.  Indeed, by his own admission, his response made no "direct[] challenge" to the Weiser Defendants' arguments; he merely "reminded this Court that, in Kansas, legal malpractice claims are to be determined by the trier of fact,"[26] and, therefore, the Weiser Defendants' conduct "is not properly 'a matter of law' to be decided on a motion to dismiss."[27]   Temporarily setting aside whether that argument is sound,[28]

---

[23] Doc. 22 at 3.

[24] Doc. 20-1 at 10.

[25] Doc. 22 at 3.  In this sense, Hartleib's argument for reconsideration might more appropriately be characterized as one to "correct clear error"—i.e., the Court allegedly erred in judging his claim's plausibility from anything other than his complaint's face alone —rather than one to "prevent manifest injustice."

[26] *Id.* at 6.

[27] Doc. 12 at 16.

[28] For this proposition, Hartleib relied on *Bergstrom v. Noah*, 266 Kan. 847, 875, 974 P.2d 431, 553–54 (1999). *Bergstrom* says nothing more than "negligence is a question normally decided by the trier of fact." *Id.* It does nothing, however, to relieve Hartleib of his burden to plead a plausible claim in the first instance. Here, Hartleib made a general allegation that the Weiser Defendants' disclosed "privileged communications." Doc. 1-2 at 9. But that sole allegation, in light of the uncontroverted Sprint and Equifax litigation documents, lacked "enough facts to . . . nudge[]

that argument says nothing about the Court's authority to consider the relevant Sprint and Equifax litigation documents.  And elsewhere, Hartleib's response encouraged the Court to "consider not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference."[29]  Hartleib even cited certain documents submitted by the Weiser Defendants[30] and, with his response, presented certain other exhibits relating to the Sprint litigation.[31]  Ultimately, any objection Hartleib had to the Court reviewing "the communications attached to the Weiser [D]efendants' motion to dismiss" belonged in his response.[32]  Because he now uses his reconsideration motion "to . . . advance arguments that could have been raised in prior briefing," his motion "is not appropriate."[33]

Second, notwithstanding the argument's untimeliness, the Court made no "improper factual determination," as Hartleib suggests.[34]  Hartleib essentially relies on the general rule that a court reviews a complaint's sufficiency from only the complaint itself,  but he overlooks a limited exception that allows a court to "consider documents 'the complaint incorporates by reference,' 'documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity,' and 'matters of which a court may take judicial notice.'"[35]  Consistent with this principle, the Court was authorized to review Hartleib's

---

[his] claim across the line from conceivable to plausible." *Bel Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Even now, as discussed elsewhere in this Order, Hartleib offers nothing that would close the "conceivable to plausible" gap in his allegations.

[29] Doc. 12 at 11.

[30] *See, e.g.*, *id.* at 3–8, 12, 14–15, 17.

[31] *See generally* Docs. 12-1, 12-2, and 12-3.

[32] Doc. 22 at 3.

[33] *Alpenglow Botanicals*, 894 F.3d at 1203.

[34] Doc. 22 at 3.

[35] *Smallen v. The Western Union Co.*, 950 F.3d 1297, 1305 (10th Cir. 2020).

complaint alongside the Sprint and Equifax filings containing the relevant disclosures.  Not only were these filings central to Hartleib's malpractice claim and undisputed by the parties, but they also were properly subject to judicial notice.[36]  As such, Hartleib's argument identifies no error or injustice for this Court to correct.

Third, Hartleib makes an unavailing claim that reversing dismissal and affording amendment will prevent a manifest injustice, as his waiver encompasses his proposed amendment. Under Kansas law,[37] Hartleib's "disclosure to a third party of a communication made during a confidential consultation with his attorney 'eliminates whatever privilege the communication may have originally possessed.'"[38]  Hartleib takes the position that he never waived privilege as to the alleged fee-splitting proposal Weiser disclosed in the Equifax litigation, because the confidential communications Hartleib actually disclosed in the earlier Sprint litigation said nothing about that proposal.  But Hartleib takes too narrow a view of his disclosure and Kansas law.

Hartleib has no privilege to prevent another from disclosing "a specified matter" if, with knowledge of the privilege and without being coerced, tricked, deceived, or defrauded,  he "disclos[e]d of any part of th[at] matter."[39]  Hartleib alleges no coercion, trickery, deceit, fraud, or ignorance of his attorney-client privilege to undermine the willful and intelligent character his self-prepared May 12, 2016 objection manifests.  In that objection,  Hartleib criticized the Weiser

---

[36] *See, e.g.*, *United States v. Schubert*, 797 F. App'x 395, 399 n.4 (10th Cir. 2019) ("It is well-settled that 'we may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand.'").

[37] "In a diversity case such as this one, FRE 501 requires a decision on privilege be made according to state law." *BridgeBuilder Tax + Legal Servs., P.A. v. Torus Specialty Ins. Co.*, No. 16-2236-JWl-GEB, 2017 WL914809, at *3 (D. Kan. Mar. 8, 2017).  Here, neither party has ever disputed that Kanas law controls.

[38] *Kansas ex rel. Stovall v. Meneley*, 271 Kan. 355, 375, 22 P.3d 124, 141 (2001).

[39] Kan. Stat. Ann. § 60-437.

Defendants' refusal to file a Sprint derivative suit in his name and then disclosed confidential emails discussing that decision.  In the self-prepared amicus brief Hartleib filed in the later Equifax action, Hartleib again criticized the Weiser Defendants' decision-making in filing the Sprint litigation with a plaintiff other than him.  And in both filings, Hartleib used his former attorney-client relationship with the Weiser Defendants to bolster the credibility of his various accusations against the Weiser Defendants.  In taking these actions, Hartleib waived any attorney-client privilege as to the "matter" of the Weiser Defendants' decision to use a different named plaintiff for the Sprint litigation.  Weiser's fee-splitting statement later in the Equifax litigation was "part of th[at] matter," and so, covered by Hartleib's earlier voluntary waiver.[40]  Indeed, once Hartleib had destroyed the attorney-client privilege as to that matter, and for the purpose of opposing the Weiser Defendants' efforts in the Sprint and Equifax litigations, fairness entitled the Weiser Defendants to respond.[41]

## IV.    Conclusion

To summarize, Hartleib's reconsideration motion raises unavailing arguments that he could have raised before.  And now, as before, he alleges a conceivable but ultimately implausible claim.  Conceivably, the Weiser Defendants may have:

> Us[ed] Mr. Hartleib's communications with them, which were protected by the attorney-client privilege, against him in connection with the underlying [Sprint] litigation . . . .  In addition, [they also] shar[ed] privileged communications in the unrelated [Equifax litigation], and proffer[ed] falsehoods relating to said communications in a willful attempt to harm Mr. Hartleib and obfuscate their duplicitous acts—

---

[40] *See id.*

[41] *See BridgeBuilder*, 2017 WL914809, at *7–*8 (identifying "underlying considerations of fairness and prejudice" as "common themes" found in various Kansas rules relating to privilege).

specifically, by

> Represent[ing] to the United States District Court for the Northern District of
> Georgia that Mr. Hartleib "strongly implied that he was interested in sharing any
> potential attorneys' fees that the Weiser Firm might recover" in violation of the
> attorney-client privilege.[42]

But the "privilege" label Hartleib applies involves a legal determination that belongs to this Court;

the Court need not accept the "naked assertion" of Hartleib's label without "further factual

enhancement."[43]  And,  in light of the uncontroverted Sprint and Equifax litigation documents, no

further facts plausibly support applying that label here.  Hartleib, therefore, still lacks "enough

facts to . . . nudge[] [his] claim across the line from conceivable to plausible."[44]  As such, he

proposes a futile amendment.[45]

      **IT IS THEREFORE ORDERED** that Plaintiff's Motion For Reconsideration (Doc. 20)

is hereby **DENIED.**

      **IT IS SO ORDERED**.

      Dated this 22nd day of June 2020.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[42] Doc. 20-1 at 9–10.

[43] *Ashcroft v. Iqbal*, 556 U.S.662, 678 (2009).

[44] *Twombly*, 550 U.S. at 570.

[45] For essentially the same reason, Hartleib's alternative request that the Court amend judgment to dismiss
this claim *without* prejudice is denied. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A
dismissal *with* prejudice is appropriate where a complaint fails to state a claim for relief under Rule 12(b)(6) and
granting leave to amend would be futile.").